## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

PLAYPOWER LT FARMINGTON, INC.,       )
                                                  )
            Plaintiff,       )
                                                  )
v.                                                  )     Case No.
                                                  )
DIBBLE & SONS PARK EQUIPMENT, INC.,       )
        Serve:  Stephen G. Dibble       )     **JURY TRIAL DEMANDED**
                Registered Agent       )
                74 Moffat Road       )
                Salem, MA 01970       )
                                                  )
            Defendant.       )

## COMPLAINT

COMES NOW plaintiff PlayPower LT Farmington, Inc., and for its claims for relief against defendant Dibble & Sons Park Equipment, Inc., states as follows:

### NATURE OF THE ACTION

1.     This is an action for injunctive relief and damages arising out of the defendant's infringement of various copyrights, trademarks and trade dress owned by, or licensed to, plaintiff, its acts of unfair competition and deceptive trade practices, and its violations of an Exclusive Sales Representative Agreement.  Plaintiff alleges claims under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, the Missouri anti-dilution statute, Mo. Rev. Stat. § 417.061, and Missouri common law.

### PARTIES, JURISDICTION AND VENUE

2.     Plaintiff PlayPower LT Farmington, Inc. ("PlayPower") is a Missouri corporation with its principal place of business in Farmington, Missouri.  PlayPower, therefore, is a citizen of Missouri.  PlayPower is engaged in the manufacture and sale of outdoor commercial playground

equipment, play systems, play structures and contained play products under the brand Little Tikes Commercial®. PlayPower is the world's largest recreational play company.

3.      Dibble & Sons Park Equipment, Inc. ("Dibble & Sons") is a Massachusetts corporation with its principal place of business in Salem, Massachusetts. Dibble & Sons, therefore, is a citizen of Massachusetts. Dibble & Sons was formerly the exclusive Little Tikes Commercial® sales representative in the New England area.

4.      This Court has federal question and diversity jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a)-(b) and 1367(a), and 15 U.S.C. §§ 1114, 1121 and 1125. The amount in controversy exceeds $75,000.00.

5.      This Court has personal jurisdiction over Dibble & Sons because PlayPower and Dibble & Sons entered into an Exclusive Sales Representative Agreement in the State of Missouri, pursuant to which, among other things, the parties expressly "agree[d] to and accept[ed] the personal and exclusive jurisdiction of . . . the Eastern District Federal Court presiding in St. Louis City, Missouri for purposes of any action to enforce, or in aid of enforcement of, this Agreement."

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) for the reason that a substantial part of the events or omissions giving rise to PlayPower's claims occurred herein, and for the further reason that the parties expressly consented to this venue.

## BACKGROUND FACTS

7.      PlayPower spends significant sums of money promoting its goods and services in the United States each year. Such promotion includes marketing the goods and services offered under the Little Tikes Commercial® trade name and trademark, for which it holds a license from Little Tike, Inc., as well as marketing various other goods and services that have been developed by PlayPower independently, including but not limited to products such as WingWalls®, Infinity®

2

Climbers, LandSoft® rubber mulch, LandSoft® synthetic turf, Shadebuilders®, Play Builders®, Kid

Builders®, Max Play® and Learning Lab®.

8.      PlayPower has made extensive use of the Little Tikes Commercial® trade name and

trademark, as well as various other marks for its goods and services throughout the United States.  It

owns federal registrations for the following marks, all of which are valid and subsisting:

| MARK | REG NO. | REG. DATE |
|------|---------|-----------|
| Gibraltar | 3085063 | 4/25/06 |
| Infinity | 2946726 | 5/3/05 |
| Iron Mountain Forge and Design | 1339089 | 6/4/85 |
| Kid Builders | 3085411 | 4/25/06 |
| Kid Tiles | 2473606 | 7/31/01 |
| Kid Tiles & Design | 1756997 | 3/9/93 |
| Landsoft | 3243765 | 5/22/07 |
| Learning Lab | 3262528 | 7/10/07 |
| Matrix | 3206868 | 2/6/07 |
| Max Play | 2496028 | 10/9/01 |
| Play Builders | 2471640 | 7/24/01 |
| Shadebuilders | 3192295 | 1/2/07 |

(collectively, "PlayPower Trademarks").

9.      As an integral part of its efforts to market and promote its goods and services,

PlayPower has also developed product literature and commercial catalogs.  PlayPower's commercial

catalogs are valuable commercial assets in that they provide information that consumers desire and

in which they have come to have confidence, as well as provide a means of easy access for

identifying, evaluating and purchasing PlayPower's goods and services.  PlayPower developed its

Little Tikes Commercial® 2007 Commercial Catalog, for which it owns copyright registration

number TX0006556062 dated April 3, 2007.

10.     The Little Tikes Commercial® trade name, trademark and logo, as well as the various

other trade names, trademarks (including the PlayPower Trademarks), logos and catalogs developed

752221.1

by PlayPower for its products and services, are widely known as identifying dependable, safe and quality goods and services.

11.     As a result of the foregoing, PlayPower's trade names, trademarks and logos have developed and possess secondary and distinctive meaning to purchasers of the goods and services bearing the Little Tikes Commercial® and PlayPower trade names, trademarks and logos.

12.     On January 31, 2006, PlayPower and Dibble & Sons entered into an Exclusive Sales Representative Agreement.  A copy of such agreement is attached hereto as Exhibit A.  From January 31, 2006, until July 4, 2010, Dibble & Sons was PlayPower's exclusive Little Tikes Commercial® sales representative in the New England area, which was defined to include Connecticut, Rhode Island, Massachusetts, New Hampshire, Vermont and Maine (the "Territory").

13.     In the Exclusive Sales Representative Agreement, PlayPower and Dibble & Sons expressly acknowledged "the fact that the name 'Little Tikes' has through extensive advertising, and because of its connection with quality products, acquired a meaning in the minds of the public which [PlayPower] desires to preserve and enhance. . . ."  To that end, in the agreement, Dibble & Sons expressly agreed that, "during the term of this Agreement *or at any time thereafter,*" it would not use PlayPower's "corporate name, copyrights, trade names, trademarks, patents and/or other intellectual property rights, . . . . specifically including the trade names and trademark 'Little Tikes' (hereafter, collectively referred to as 'Intellectual Property') in any manner whatsoever *except and only to the extent specifically authorized in writing by [PlayPower].*"  (Emphasis added).

14.     In the Exclusive Sales Representative Agreement, Dibble & Sons further acknowledged and agreed that "upon termination of this Agreement, all [of its] interest in signs, letterheads, promotional materials and advertising media containing any reference to [PlayPower's]

4

Intellectual Property shall revert to [PlayPower] and [Dibble & Sons] shall execute whatever documentation may be necessary to implement such reversion."

15.    In the Exclusive Sales Representative Agreement, Dibble & Sons also expressly acknowledged that PlayPower "may provide to [Dibble & Sons], or [Dibble & Sons] may otherwise gain access to [PlayPower's] valuable technical and non-technical information (including, without limitation, information related to [PlayPower's] processes, trade secrets, products, product development, manufacturing techniques, finances, engineering, marketing, business plans, customers, pricing, services, etc.) which is not generally known to the trade or to the public, which is held confidential by [PlayPower], and/or which [Dibble & Sons] has a reasonable basis to believe [PlayPower] holds as confidential (hereinafter referred to collectively as 'Confidential Information')." Dibble & Sons agreed to not only hold in confidence all confidential information provided to it by PlayPower, but also that, "within thirty (30) days of the termination of this Agreement, [Dibble & Sons] and its principals, owners, officers or shareholders shall return to [PlayPower] all Confidential Information, drawings, blueprints, technical data, unused promotional literature, other selling materials, and records pertaining to [PlayPower's] business."

16.    In the Exclusive Sales Representative Agreement, Dibble & Sons also agreed to the following noncompetition restriction, in pertinent part:

> It is acknowledged and agreed that during the term of this Agreement anywhere in the United States, and *for a period of six months after the termination of this Agreement (for whatever cause or reason)* anywhere in the Territory, [Dibble & Sons] and its principals, owners, officers and shareholders shall not in any capacity perform any services for any "Competitors" of [PlayPower], and shall not otherwise promote or sell "Competitive Products." The term "Competitors" is defined as any entities, both existing and future (including their parent, affiliated and subsidiary companies and their successors in interest), engaged in the design, manufacture, distribution or sale of Competitive Products in the United States. "Competitive Products" are defined as any products or services that directly compete with the products or services offered for sale by [PlayPower] at any given time. . . .

752221.1

[Dibble & Sons] acknowledges that the businesses of [PlayPower] are competitive with companies doing business throughout the United States, and that the limitations placed upon it, its principals, owners, officers and shareholders in terms of time, geographical restriction, and the scope of prohibited activity are reasonable and necessary in order for [PlayPower] to protect its legitimate business interests. [Dibble & Sons] expressly agrees that none of the limitations placed upon it by virtue of this prohibition against competition will prohibit it or its principals, owners, officers and shareholders from obtaining gainful employment. [Dibble & Sons] agrees that its breach of this prohibition against competition would cause [PlayPower] irreparable harm, and that monetary damages would be difficult to ascertain, and insufficient to compensate [PlayPower]. In addition to all remedies granted by law, including monetary damages, [PlayPower] shall be entitled to injunctive relief in the form of injunction and specific performance. (Emphasis added).

17. In the Exclusive Sales Representative Agreement, the parties acknowledged and agreed that "this Agreement is entered in the State of Missouri and that it shall be governed by and construed in accordance with the laws of the State of Missouri, regardless of any state choice of laws statutes."

18. Pursuant to the Exclusive Sales Representative Agreement, Dibble & Sons was granted access to PlayPower's valuable confidential and proprietary technical and nontechnical information related to PlayPower's business, including information related to PlayPower's processes, trade secrets, products, product development and marketing, manufacturing techniques, business plans, customers, pricing and services, which is not generally known to the public.

19. Pursuant to the Exclusive Sales Representative Agreement, Dibble & Sons was granted permission to use PlayPower's Intellectual Property. Among other things, Dibble & Sons created a worldwide web site on the Internet using the domain name http://www.dibbleparks.com. Attached hereto as Exhibit B is a printout of excerpts from the Dibble & Sons web site as it currently appears. The Dibble & Sons web site is replete with PlayPower's Intellectual Property, including trade names, trademarks, logos, product literature, catalogs, images, photos and renderings, which

752221.1

either belong, or have been licensed, to PlayPower, including but not limited to the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark.

20.     Among other things, the Dibble & Sons web site states that "Dibble & Sons is the exclusive Little Tikes Commercial® representative in our area." The web site, for all intents and purposes, appears to be a Little Tikes Commercial® web site, with the Little Tikes Commercial® logo on virtually every page. It is littered with photographs, illustrations and renderings of the various products offered by PlayPower under the Little Tikes Commercial® and other brands, and includes a link to the Little Tikes Commercial® 2007 Commercial Catalog.

21.     On or about March 4, 2010, Dibble & Sons was advised by PlayPower that the Exclusive Sales Representative Agreement was being terminated effective July 4, 2010.

22.     Notwithstanding the termination of the Exclusive Sales Representative Agreement, Dibble & Sons has failed and refused to return to PlayPower and/or destroy all confidential information or other documents and information containing PlayPower's Intellectual Property.

23.     Notwithstanding the termination of the Exclusive Sales Representative Agreement, and despite PlayPower's written demand that it cease doing so, Dibble & Sons continues to use PlayPower's corporate name, copyrights, trade names, trademarks and other intellectual property rights, including the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark.

24.     Notwithstanding the termination of the Exclusive Sales Representative Agreement, and despite PlayPower's written request that it immediately take down and deactivate the Dibble & Sons web site and cease using PlayPower's Intellectual Property, Dibble & Sons continues to operate the Dibble & Sons web site, holding itself out as the exclusive Little Tikes Commercial® representative in the New England area and using PlayPower's corporate name, copyrights, trade

752221.1

names, trademarks and other intellectual property rights, including the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark.

25.      Dibble & Sons commercial use and appropriation of PlayPower's Intellectual Property, including but not limited to PlayPower's corporate name, copyrights, trade names, trademarks and other intellectual property rights, which includes the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark, has enhanced the value of the Dibble & Sons web site and business and diluted and diminished the value of PlayPower's web site and business.

26.      By holding itself out as the exclusive Little Tikes Commercial® representative in the New England area and operating the Dibble & Sons web site with PlayPower's Intellectual Property, Dibble & Sons has published information that was and is erroneous and misleading concerning the nature of its business and the relationship between Dibble & Sons and PlayPower.  Dibble & Sons' actions are likely to cause confusion, mistake and deception among consumers.

27.      On information and belief, and as demonstrated by its web site, Dibble & Sons is promoting and attempting to sell competitive products and services in the New England area.

28.      PlayPower has requested that Dibble & Sons cease and desist from its operation of the Dibble & Sons web site and its unauthorized use of PlayPower's Intellectual Property, including but not limited to PlayPower's corporate name, copyrights, trade names, trademarks and other intellectual property rights, which includes the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark.  Dibble & Sons has failed and in effect refused to cease any of its aforesaid willful and wrongful conduct.  PlayPower will continue to suffer irreparable injuries and harm for which it has no adequate remedy at law unless Dibble & Sons is enjoined temporarily, preliminarily and permanently from engaging in such conduct.

752221.1

## COUNT I – BREACH OF CONTRACT

29.     PlayPower restates and incorporates herein by reference paragraphs 1 through 28 above.

30.     As set forth above, Dibble & Sons has breached the Exclusive Sales Representative Agreement in that, among other things, Dibble & Sons has (a) failed and refused to return to PlayPower and/or destroy all confidential information or other documents and information containing PlayPower's Intellectual Property; (b) continued to use PlayPower's corporate name, copyrights, trade names, trademarks and other intellectual property rights, including the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark, without PlayPower's permission; (c) continued to operate the Dibble & Sons web site, holding itself out as the exclusive Little Tikes Commercial® representative in the New England area and using PlayPower's corporate name, copyrights, trade names, trademarks and other intellectual property rights, including the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark; (d) promoted and attempted to sell products and services, which are competitive to those offered by PlayPower, in the New England area.

31.     As a direct and proximate result of Dibble & Sons' breaches of the Exclusive Sales Representative Agreement, PlayPower has suffered damages in an amount not yet determined and harm, including but not limited to the loss of business opportunities, loss of competitive advantage and loss of good will.

32.     As a result of Dibble & Sons' ongoing breaches of the Exclusive Sales Representative Agreement, PlayPower will continue to suffer irreparable injuries and harm for which PlayPower has no adequate remedy at law unless Dibble & Sons is enjoined temporarily, preliminarily and permanently from engaging in such conduct.

752221.1

33.     All conditions precedent to the maintenance of this action have been satisfied, waived or excused.

## COUNT II – CONVERSION

34.     PlayPower restates and incorporates herein by reference paragraphs 1 through 33 above.

35.     Dibble & Sons does not have permission to retain and use any of PlayPower's Confidential Information, including drawings, blueprints, technical data, promotional literature, catalogs, other selling materials and records pertaining to PlayPower's business.

36.     Dibble & Sons continues to exercise dominion and control over PlayPower's Confidential Information, including drawings, blueprints, technical data, promotional literature, catalogs, other selling materials and records pertaining to PlayPower's business to the detriment of PlayPower's ownership interests and rights to possession.

37.     Dibble & Sons has not returned and refuses to return PlayPower's Confidential Information, including drawings, blueprints, technical data, promotional literature, catalogs, other selling materials and records pertaining to PlayPower's business.

38.     As a direct and proximate result of Dibble & Sons' actions as alleged herein, PlayPower has suffered and will continue to suffer damages.

## COUNT III – TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

39.     PlayPower restates and incorporates herein by reference paragraphs 1 through 38 above.

40.     Dibble & Sons' use of the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark constitutes infringement of the trademarks registered and/or licensed to PlayPower.

752221.1

41. Dibble & Sons' use of the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark is likely to cause confusion, mistake and deception among consumers as to the identity and origin of Dibble & Sons' goods and services, as well as the association, connection or affiliation between Dibble & Sons and PlayPower.

42. PlayPower has been damaged by Dibble & Sons' willful acts in an amount not yet determined. As a result of Dibble & Sons' willful and wrongful conduct, PlayPower will continue to suffer irreparable injuries and harm for which PlayPower has no adequate remedy at law unless Dibble & Sons is enjoined temporarily, preliminarily and permanently from engaging in such conduct.

## COUNT IV – COMMON LAW TRADEMARK INFRINGEMENT

43. PlayPower restates and incorporates herein by reference paragraphs 1 through 42 above.

44. In addition to the federal registrations owned by PlayPower as set forth in paragraphs 7 and 8 above, PlayPower also uses the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark in various forms and styles in connection with its goods and services described above, which trademarks have not, as yet, been registered in the United States Patent and Trademark Office.

45. PlayPower owns and enjoys common law rights in Missouri and throughout the United States in and to the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark for the described goods and services, which are superior to any rights which Dibble & Sons may claim in and to such trademarks in any form or style with respect to the offering of such goods and services.

11

752221.1

46.     Dibble & Sons' use of the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark is likely to cause confusion, mistake and/or deception among consumers.

47.     PlayPower has been damaged by Dibble & Sons' willful acts in an amount not yet determined.  As a result of Dibble & Sons' willful and wrongful conduct, PlayPower will continue to suffer irreparable injuries and harm for which PlayPower has no adequate remedy at law unless Dibble & Sons is enjoined temporarily, preliminarily and permanently from engaging in such conduct.

## COUNT V – UNFAIR COMPETITION UNDER 15 U.S.C. § 1125

48.     PlayPower restates and incorporates herein by reference paragraphs 1 through 47 above.

49.     Dibble & Sons' use of the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark to promote, market or sell goods and services in direct competition with PlayPower constitutes unfair competition under 15 U.S.C. § 1125(a).

50.     Dibble & Sons' use of the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark is likely to cause confusion, mistake and/or deception among consumers.

51.     As a direct and proximate result of Dibble & Sons' unfair competition, PlayPower has suffered damages in an amount not yet determined and harm, including but not limited to the loss of business opportunities, loss of competitive advantage and loss of good will.

52.     As a result of Dibble & Sons' unfair competition, PlayPower will continue to suffer irreparable injuries and harm for which PlayPower has no adequate remedy at law unless Dibble & Sons is enjoined temporarily, preliminarily and permanently from engaging in such conduct.

752221.1

## COUNT VI – VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125 - DILUTION

53.    PlayPower restates and incorporates herein by reference paragraphs 1 through 52 above.

54.    Dibble & Sons' continuing use of brands, names and marks similar or identical to PlayPower's brands, names and marks, including but not limited to the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark, have had and will continue to have an adverse and deleterious effect on the value of the PlayPower Trademarks and Little Tikes Commercial® trade name and trademark.

55.    Since the PlayPower Trademarks and Little Tikes Commercial® trade name and trademark will be deprived of any and all distinctiveness, in the event Dibble Son's unlawful and unauthorized use of such brands, names and marks continue, PlayPower is entitled to temporary, preliminary and permanent injunctive relief ordering Dibble & Sons to cease this unlawful dilution.

## COUNT VII – VIOLATION OF MO. REV. STAT. § 417.061 - DILUTION

56.    PlayPower restates and incorporates herein by reference paragraphs 1 through 55 above.

57.    Dibble & Sons' continuing use of brands, names and marks similar or identical to PlayPower's brands, names and marks, including but not limited to the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark, have had and will continue to have an adverse and deleterious effect on the value of the PlayPower Trademarks and Little Tikes Commercial® trade name and trademark.

58.    Since the PlayPower Trademarks and Little Tikes Commercial® trade name and trademark will be deprived of any and all distinctiveness, in the event Dibble Son's unlawful and

752221.1

unauthorized use of such brands, names and marks continue, PlayPower is entitled to temporary, preliminary and permanent injunctive relief ordering Dibble & Sons to cease this unlawful dilution.

## COUNT VIII – COPYRIGHT INFRINGEMENT

59.     PlayPower restates and incorporates herein by reference paragraphs 1 through 58 above.

60.     The Little Tikes Commercial® 2007 Commercial Catalog contains material which is wholly original to PlayPower and which is copyrightable subject matter under the Copyright laws of the United States.

61.     PlayPower is the owner of all rights, title and interest in and to the copyright of the Little Tikes Commercial® 2007 Commercial Catalog, and has the exclusive rights set out in 17 U.S.C. § 106.

62.     PlayPower has caused copyright notices to be placed on the Little Tikes Commercial® 2007 Commercial Catalog.

63.     Dibble & Sons has willfully infringed PlayPower's rights by reproducing, distributing and otherwise making available on its web site copies of the Little Tikes Commercial® 2007 Commercial Catalog.

64.     Dibble & Sons' willful and unauthorized acts of copying, distributing and otherwise making available on its web site copies of the Little Tikes Commercial® 2007 Commercial Catalog infringes on PlayPower's copyright in violation of 17 U.S.C. §§ 106(1) and (3).

65.     Dibble & Sons' willful acts were taken without PlayPower's permission, license or consent.

66.     PlayPower has been damaged by Dibble & Sons' willful acts in an amount not yet determined.  As a result of Dibble & Sons' ongoing willful acts, PlayPower will continue to suffer

752221.1

irreparable injuries and harm for which PlayPower has no adequate remedy at law unless Dibble & Sons is enjoined temporarily, preliminarily and permanently from engaging in such willful acts.

## COUNT IX – UNFAIR COMPETITION UNDER MISSOURI COMMON LAW

67.     PlayPower restates and incorporates herein by reference paragraphs 1 through 66 above.

68.     Dibble & Sons' conduct alleged herein, and as specifically set forth in paragraphs 21 through 28 and Counts I through VIII above, constitutes acts of unfair competition.

69.     As a result of Dibble & Sons' willful and wrongful conduct, PlayPower will continue to suffer irreparable injuries and harm for which PlayPower has no adequate remedy at law unless Dibble & Sons is enjoined temporarily, preliminarily and permanently from engaging in such conduct.

70.     Dibble & Sons has acted with evil motive or reckless indifference to PlayPower's rights, justifying the imposition of punitive damages.

WHEREFORE, plaintiff PlayPower LT Farmington, Inc. prays for judgment in its favor and against defendant Dibble & Sons Park Equipment, Inc. as follows:

A.     For temporary, preliminary and permanent injunctive relief restraining, enjoining and prohibiting Dibble & Sons and its officers, agents and employees, and all those in privity or acting in concert with them, from, directly or indirectly:

(1)     using or disclosing any confidential information of any kind, nature or description concerning any matters affecting or relating to the business of PlayPower, including without limitation related to PlayPower's processes, trade secrets, products, product development, manufacturing techniques, finances, engineering, marketing, business plans, customers, pricing, services, etc.;

752221.1

      (2)    for a period of six (6) months, anywhere in the Territory, performing any services for any competitors of PlayPower or otherwise promoting or selling products or services that directly compete with the products or services offered by PlayPower;

      (3)    making any use of PlayPower's Intellectual Property, including trade names, trademarks, logos, product literature, catalogs, images, photos and renderings, which either belong, or have been licensed, to PlayPower, including but not limited to the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark;

      (4)    infringing PlayPower's copyrights in and to its copyrighted works, namely the Little Tikes Commercial® 2007 Commercial Catalog, and from further copying, distributing or otherwise making available PlayPower's copyrighted works; and

      (5)    infringing PlayPower's rights in the PlayPower's Intellectual Property, including trade names, trademarks, logos, product literature, catalogs, images, photos and renderings, which either belong, or have been licensed, to PlayPower, including but not limited to the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark.

    B.    For temporary, preliminary and permanent injunctive relief commanding and directing Dibble & Sons and its officers, agents and employees, and all those in privity or acting in concert with them, to:

      (1)    return all originals and copies of documents containing Confidential Information belonging to PlayPower, including without limitation all drawings, blueprints, technical data, promotional literature, catalogs, other selling materials, and records pertaining to PlayPower's business, which refer or reflect PlayPower's processes, trade secrets, products, product development, manufacturing techniques, finances, engineering, marketing, business plans, customers, pricing, services;

752221.1

(2)    transfer all of its interest in signs, letterheads, advertisements, brochures, promotional materials and advertising media containing any reference to PlayPower's Intellectual Property to PlayPower, and executing whatever documentation may be necessary to implement such transfer;

(3)    account for and pay over to PlayPower all gains, profits and advantages derived by Dibble & Sons from the activities herein complained of; and

(4)    immediately deactivate its web site until all Dibble & Sons confirms that it has removed from its web site and any directories, guides and internet search engines any and all references to PlayPower's Intellectual Property, including trade names, trademarks, logos, product literature, catalogs, images, photos and renderings, which either belong, or have been licensed, to PlayPower, including but not limited to the PlayPower Trademarks and the Little Tikes Commercial® trade name and trademark.

C.    Awarding PlayPower damages in an amount to be determined;

D.    Awarding PlayPower punitive damages in an amount to be determined;

E.    Awarding PlayPower its reasonable attorneys' fees, costs and expenses;

F.    Granting PlayPower such other and further relief, whether at law or in equity, as may be justified in the circumstances.

752221.1

SPENCER FANE BRITT & BROWNE LLP

By:      /s/Erik O. Solverud
Gerald P. Greiman, #3276
Erik O. Solverud, #61269
1 N. Brentwood Blvd., Suite 1000
St. Louis, MO 63105
Telephone (314) 863-7733
Facsimile (314) 862-4656
ggreiman@spencerfane.com
esolverud@spencerfane.com

Attorneys for Plaintiff

752221.1